# IN THE COURT OF APPEALS OF IOWA

No. 23-1769
Filed March 19, 2025

**HENRY LAMONT MYLES,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Scott County, Mark R. Lawson,

Judge.


        An applicant appeals the district court's denial of his application for

postconviction relief. **AFFIRMED.**


        Leah Patton of Patton Legal Services, LLC, Ames, for appellant.

        Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney

General, for appellee State.


        Considered by Tabor, C.J., Langholz, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**CARR, Senior Judge.**

Henry Lamont Myles appeals the district court's denial of his application for postconviction relief (PCR), arguing the district court wrongly denied the application because (1) his trial counsel was ineffective in failing to explain the meaning of an "open" plea agreement to him and in failing to file a motion in arrest of judgment after it became clear that Myles misunderstood the plea agreement, and (2) he is actually innocent of the charge of kidnapping in the third degree. We affirm.

## I. Background Facts and Proceedings

In January 2021, Myles was charged by trial information in FECR413406 with one count of second-degree kidnapping—ransom (count I) and one count of third-degree sexual abuse (count II). The trial information was later amended in May to add one count of assault while participating in a felony (count III) and the habitual offender sentencing enhancement. Also in May, Myles entered into an omnibus plea agreement with the State that would resolve six separate criminal cases against him, including FECR413406. In that case, Myles agreed to plead guilty to a lesser charge of third-degree kidnapping as a habitual offender on count I and assault while participating in a felony as a habitual offender on count III, with the State agreeing to dismiss count II of the trial information.

The plea agreement provided for the following sentencing agreement: "Incarceration is mandatory in FECR413406. It is open whether the counts run concurrent or consecutive with each other. However, if the defendant accepts the plea offer by May 17, 2021, the State will recommend that the two sentences in

FECR407004 and FECR410852 run concurrent to each other." Myles timely accepted the plea offer.

In his plea, Myles provided the following factual basis for his convictions:

Ct. 1
On October 2, 2020, I was in Davenport, IA in Scott County, IA. On that day, I confined [the victim] to the Shell gas station bathroom. I did so with the specific intent to inflict serious injury upon her. I knew that I did not have the authority or consent of [the victim] to do so.

Ct. 3
On October 2, 2020, I was in Davenport, IA in Scott County, IA. At this time, I committed an assault on [the victim], by striking her. At the time of the assault, I was participating in a theft in the first degree. I intended and was in [the] process of taking money from the person of [the victim].

Consistent with the plea agreement, the State recommended concurrent sentencing in FECR407004 and FECR410852; it recommended consecutive sentencing for counts I and III in FECR413406. The district court sentenced Myles to consecutive sentences on counts I and III with each count requiring a three-year mandatory minimum sentence. Myles appealed that sentence, arguing the consecutive sentences were an abuse of discretion. We affirmed the district court's sentencing, finding no abuse of discretion. *State v. Myles*, No. 21-0995, 2022 WL1100279, at *2 (Iowa Ct. App. Apr. 13, 2022).

Myles then applied for PCR in May 2022, arguing he received "ineffective assistance of trial and appellate counsel," an "illegal sentence," and that he was "actually innocent." The district court denied the petition following the October PCR trial. Myles now appeals.

## II. Standard of Review

We review PCR proceedings for errors at law but expand the scope of review to de novo when a denial of constitutional rights is alleged. *Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010).

## III. Discussion

Myles argues on appeal that the district court wrongly denied his PCR application because (1) his trial counsel failed to adequately explain the meaning of an "open" plea agreement to him and failed to file a motion in arrest of judgment after it became clear that Myles misunderstood the plea agreement, and (2) he is actually innocent of the charge of kidnapping in the third degree.

### A. "Open" Plea Agreement

Myles argues that trial counsel was ineffective because she failed to adequately explain the terms of the plea agreement to him. In particular, Myles claims that the meaning of an "open plea" was never explained to him.

To prove ineffective assistance of trial counsel, Myles must show both that "(1) trial counsel failed to perform an essential duty; and (2) this omission resulted in prejudice." *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015) (citation omitted). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (citation omitted).

For the breach-of-duty prong, there is a presumption that trial counsel "competently performed . . . her duties." *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 898 (Iowa 2019). Myles must show that, by a preponderance of the evidence, "trial counsel's representation fell below an objective standard of

reasonableness." *Id.* (cleaned up). "Counsel breaches an essential duty when counsel makes such serious errors that counsel is not functioning as the advocate the Sixth Amendment guarantees." *Id.* at 869 (citation omitted). "Improvident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel." *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992).

For the prejudice prong, Myles "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019) (citation omitted). In this case, Myles would need to show "that but for counsel's breach of duty, [he] would not have pled guilty and would have elected instead to stand trial." *State v. Carroll*, 767 N.W.2d 638, 644 (Iowa 2009).

We reject Myles's assertion to the contrary and find it was clear to him what "open" sentencing meant. First, we look to his guilty plea, in which Myles acknowledged, "I have read and understand the entire [plea agreement]. All of my questions concerning the plea agreement have been answered by my attorney." And in the plea he later acknowledged the following: "I understand the judge can order each sentence to be served consecutively or concurrently to any other. . . . My attorney has explained the terms consecutive and concurrent to me." Myles acknowledged that he knew the difference between concurrent and consecutive sentencing, and the plea makes clear that the district court could use either type of sentencing—the essence of an open plea. And his plea agreement was clear in that it only required the State to recommend concurrent sentencing in

FECR407004 and FECR410852, which it did, but did not prohibit the State from otherwise recommending consecutive sentencing.

And we next observe that Myles was so comfortable with the plea terminology that, at the sentencing hearing, he expressly requested that he "should get a concurrent sentence . . . . I'm just asking the judges please, please get a concurrent sentence." Having made multiple requests for concurrent sentences, Myles thus clearly understood that consecutive sentencing was on the table. He even acknowledged that his attorney "didn't promise [him] anything" as it related to concurrent sentencing and requesting the court show him "mercy."

Additionally, it cannot be argued that Myles skimmed his plea and was unaware of its contents. His trial counsel testified, "We went through [the plea] in its entirety. And he had had to initial under every single page. . . . We went through every paragraph." Myles did write a letter to his trial counsel expressing dissatisfaction with her work, saying she was working with the prosecutor and against him. However, his counsel met with him after his plea was filed and before his sentencing hearing. She testified that when she receives letters requesting withdrawal of a plea "I follow up with the client directly. I have a conversation about whether or not they want me to withdraw the guilty plea. And if they instruct me personally to withdraw the guilty plea, and I explain the motion in arrest of judgment, then I go ahead and do so." At the conclusion of her meeting with Myles, no such motion was filed.

Accordingly, we do not credit Myles's claims that he did not know the meaning of an "open" plea agreement and did not know the prosecutor would

recommend consecutive sentencing. Like the district court, we conclude Myles failed to prove his trial counsel was ineffective in failing to withdraw his plea.

### B. Actual Innocence

Myles next argues he is actually innocent of the charge of kidnapping in the third degree. "Specifically, [Myles] did not confine [the victim] in the bathroom of the Shell gas station."

Freestanding claims of actual innocence are permitted under our state constitution. *Schmidt v. State*, 909 N.W.2d 778, 795 (Iowa 2018). A guilty plea does not "automatically mean the defendant is *actually* guilty." *Id.* at 788. We recognize that innocent defendants sometimes choose "the lesser of two evils: pleading guilty despite his or her actual innocence because the odds are stacked up against him or her, or going to trial with the risk of losing and the prospect of receiving a harsher sentence." *Id.* But actual innocence claims have limits. *Id.* at 793.

Myles must show "by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant." *Id.* at 797. To prevail on an actual innocence claim, Myles must also provide clear and convincing evidence that he is factually innocent of any lesser included offense. *See Dewberry v. State*, 941 N.W.2d 1, 10 (Iowa 2019). Here, false imprisonment is a lesser included offense of third-degree kidnapping. *See* Iowa Code § 710.7 (2020) ("A person commits false imprisonment when, having no reasonable belief that the person has any right or authority to do so, the person intentionally confines another against the other's will. A person is confined

when the person's freedom to move about is substantially restricted by force, threat, or deception.").

Because we can affirm on the lesser included offense of false imprisonment, we will analyze Myles's actual innocence claim under that charge. The victim locked herself in the Shell gas station bathroom following Myles's threat to "kill her and beat her ass." Myles argues that the victim chose to retreat to the bathroom of her own volition after he attacked her. He claims she locked the door because the gas station clerk told her to. But the gas station clerk told the victim to go to the bathroom after the victim had silently mouthed "call the police" to her. And no part of the false imprisonment statute requires Myles to have physically placed the victim in a location that she could not escape—only that he confined her. And since her freedom to move was substantially restricted, he indeed confined her. By standing outside the locked bathroom immediately following his attack on the victim and screaming, "Bitch, I'm going to kill you," and "I'm going to fuck you up," he restricted her ability to leave—her freedom of movement. Myles concedes he attacked the victim, which a reasonable fact finder could find gave her reason to be in fear of further attacks. It is irrelevant that she had her keys and cell phone with her. Neither of those items would remove Myles from the doorway. And it does not matter that he walked away shortly after. The victim would not be able to see through the door or walls to ascertain if the path of escape was clear. She would not be able to assess her chances of escape without potentially risking her own safety. Her freedom to move about was substantially restricted by his prior use of force and later threats.

Because Myles failed to show clear and convincing evidence that he was factually innocent of false imprisonment, his actual innocence claim must fail. Accordingly, we affirm the district court's denial of Myles's PCR application.

**AFFIRMED.**